**In re COLE & SONS TRUCKING SERVICES, INC., Debtor.**

**COLE & SONS TRUCKING SERVICES, INC., Plaintiff,**

**v.**

**SPRINGFIELD MACK TRUCK, INC., Defendant.**

**Bankruptcy No. 89–40385.
Adv. No. 89–4078.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 12, 1990.

Peter Stern, Springfield, Mass., for debtor/plaintiff.

Irving Labovitz, Cooley, Shrair, Alpert, Labovitz & Dambrov, Springfield, Mass., for Springfield Mack Truck, Inc., defendant.

## OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

Presented here is the classic conflict between a buyer asserting warranty coverage and a seller with a claim for repairs and a lien as security. Less common is the seller's additional claim for storage charges, and lien, for the period that the seller retained possession under its repairman's lien. A trial having been held, I uphold the repairman's lien but deny the storage lien.

George Cole and Sons Trucking Service, Inc. (the "Debtor") has operated as a debtor in possession since filing its petition under Chapter 11 on May 20, 1989. It is engaged principally in the hauling of gravel from its own gravel pits. In September of 1988, the Debtor bought a reconditioned engine from the Defendant Springfield Mack Truck, Inc. ("Springfield Mack") for installation and use in one of its trucks. Springfield Mack had previously purchased the engine from Mack Truck, Inc., for whom it is a dealer. Thereafter, the Debtor brought the truck back several times complaining about loss of power, and on one occasion for engine over-heating. Springfield Mack took care of these problems without charge.

On May 18, 1989, the truck was involved in an accident and was towed to Springfield Mack with structural damage from the accident and engine problems apparently unrelated to the accident. Springfield Mack's service manager concluded that the engine problems were not covered by any warranty and told this to the Debtor's president. Although obviously disturbed by this information, the Debtor's president said to go ahead with the repairs to the engine, but not to repair the structural damage. Springfield Mack completed its work on June 15, 1989 and so informed the Debtor. When no representative of the Debtor appeared to pay the bill and pick up the truck, Springfield Mack sent the Debtor a letter on June 27th stating that on July 3rd it would begin charging storage at the rate of $35.00 per day. It also told the Debtor that the Debtor had to pay the repair bill in full before it could obtain possession.

After several months, the Debtor commenced this adversary proceeding to compel a turnover. At a preliminary hearing, I ordered the turnover and granted to Springfield Mack a non-possessory lien on the truck to secure whatever debt was ultimately found due, specifying that the lien would have the same validity, perfection and priority as its claimed possessory liens for repairs and storage.

## I. THE REPAIR CLAIM AND LIEN

■ Springfield Mack seeks to escape implied warranty liability on the basis of a disclaimer in its invoice of "all warranty of merchantability or fitness for a particular purpose ..." That disclaimer, however, is ineffective because it is not "conspicuous" as required by Mass.Ann. Laws ch. 106, § 2–316 (Law. Co-op.1984). It appears in the same size print as the preceding sentence stating that "any warranties on the products sold herein are those made by the manufacturer." Perhaps most important, this two sentence paragraph is entitled "Parts Warranty" in large, capital letters and in darker ink. If this title read "Warranty Exclusion," what followed may be considered to be conspicuous, but certainly not otherwise.

■ In any event, the problem with the engine did not constitute a breach of the warranty of merchantability as that warranty is defined in Mass.Ann. Laws ch. 106, § 2–314 (Law. Co-op.1984). It was caused by excessive ingestion of dirt as the result of two factors unrelated to the condition of the engine when it was sold—improper securing of an air filter and a hole in a tube. Neither the filter nor the tube was part of the engine sold by Springfield Mack. The Debtor authorized the repairs, and the charges are reasonable. The repair claim of $4,341.93 is therefore proper. Springfield Mack had a possessory lien to secure the claim under Mass.Ann. Laws ch. 255, § 25, which was transformed into a non-possessory lien by this Court's prior order.

## II. THE STORAGE CLAIM AND LIEN

■ Springfield Mack also asserts a storage lien securing store charges at the rate of $35.00 per day from July 3rd to the date the truck was turned over to the Debt-or, relying upon the same lien statute, which is quoted in full below.[1] But the statute does no more than grant a lien for "proper charges" due for storage or repair. It does not purport to grant one asserting a repairman's lien the right to collect storage charges. Similar statutes have been construed to create a storage lien only to the extent that the storage claim itself is otherwise valid. *E.g., Austin v. Acey,* 660 S.W.2d 441 (Mo.Ct.App.1983); *Capson v. Sup.Ct. of Arizona,* 139 Ariz. 113, 677 P.2d 276 (1984). *See, also* Annotation, *Lien for Storage of Motor Vehicle,* 48 A.L.R.2d 894, 898–900 (1956). As in the case of the repair claim, the storage claim must rise or fall under other applicable law. A lien is merely an interest in property to secure payment of a debt or performance of an obligation. Black's Law Dictionary 832 (5th ed. 1979). *See also* 11 U.S.C. § 101(33).

■ Principles of contract law do not support the storage claim. Springfield Mack unilaterally imposed these charges; they were never agreed to by the Debtor before or after the letter of June 27th. Nor can the storage charges be justified under a theory of unjust enrichment. True, Springfield Mack took measures to protect the vehicle, bringing it into its garage each night. And the vehicle occupied space on its property that could have been used for other purposes. But Springfield Mack continued to deny the Debtor possession until the repair bill was paid. Although this was a proper exercise of its repairman's lien, denial of possession to the Debtor was a detriment and not a benefit to it. The Debtor has certainly not been enriched. *Compare Atwood v. Best Buick, Inc.,* 21 Mass.App. 70, 484 N.E.2d 647 (1985) (dealer holding car at request of

---

1. Mass.Ann.Laws ch. 255, § 25 provides:
   Lien of Garage Keepers and Repairmen.
   Persons maintaining public garages for the storage and care of motor vehicles brought to their premises or placed in their care by or with the consent of the owners thereof and persons engaged in performing work upon or in connection with the inspection, reconditioning and repairing of motor vehicles shall have a lien upon such motor vehicles for proper charges due them for the storage, work and care of the same.
   If the owner of such motor vehicle obtains possession of the same by fraud, trick or by check, draft or order upon any depository or bank which is not honored, the lien on said motor vehicle shall not be deemed to have been discharged and the lien holder may thereafter continue to enforce said lien until the proper charges due him have been paid.

customer granted storage claim under implied-in-fact contract).

Even if the Debtor were somehow viewed as having received a benefit from this storage, so as to have been "enriched," its retention of the benefit without paying for it is not "unjust" enrichment. When one's conduct benefits both him and another, it is not unjust that he be denied payment. Thus a homeowner who improves his own property and thereby enhances the value of his neighbor's property cannot recover that enhancement from the neighbor. *Restatement of Restitution,* § 1 comment c (1937). In *Jako v. Pilling Co.,* 848 F.2d 318 (1st Cir.1988), for many years a doctor had given advice, without charge to the manufacturer of equipment used in microsurgery of the larynx, to the extent that the manufacturer named its laryngoscope after him. The court denied the doctor's claim for royalties on past sales, concluding that any enrichment of the manufacturer from the doctor's advice was not unjust because the doctor had also benefited in his practice through the prestige of having had the laryngoscope named after him. For similar reasons, services rendered to gain a business advantage do not support a claim of restitution even though a benefit is conferred upon another without attainment of the business advantage. *E.g., Salamon v. Terra,* 394 Mass. 857, 477 N.E.2d 1029 (1985) (builder who was to construct houses on land to be purchased immediately prior to the house sales denied recovery from landowner for value of unfinished homes left on the property due to inability to find buyers); *Bloomgarden v. Coyer,* 479 F.2d 201 (D.C.Cir.1973) (urban and environmental consultant denied recovery of a fee for finding investor in proposed development because services were rendered in anticipation of getting consulting work from the developers).

Springfield Mack retained possession of the truck for its own benefit and business advantage—to retain its security for payment of the repair claim. A complete and voluntary loss of that possession would have terminated the lien. Mass.Ann. Laws, ch. 255 § 25 (Law. Co-op.1984); *North End Auto Park, Inc. v. Petringa*

*Trucking Co.,* 337 Mass. 618, 150 N.E.2d 735 (1958).

A separate judgment has issued establishing Springfield Mack's secured repairman's claim and denying it other relief.