PEKO OIL USA, Appellant,

v.

Gary C. EVANS, Douglas J. Dobbins, and Dallas Sunbelt Oil & Gas, Inc., Appellees.

No. 05–90–00133–CV.

Court of Appeals of Texas, Dallas.

Oct. 29, 1990.

Rehearing Denied Dec. 6, 1990.

Barry F. Cannaday, Dallas, for appellant.

Jack C. Myers, Dallas, for appellees.

Before WHITHAM, ROWE and THOMAS, JJ.

## OPINION

WHITHAM, Justice.

Appellant, Peko Oil, Inc., appeals from a judgment on the verdict in favor of appellees, Dallas Sunbelt Oil & Gas, Inc., Douglas J. Dobbins, and Gary C. Evans (Sunbelt Oil). In response to unchallenged question numbers one and three the jury found that there was no oral or written agreement between Peko Oil and Sunbelt Oil under

which Peko Oil agreed to pay Sunbelt Oil a commission if Peko Oil entered into a 67–well lease acquisition and drilling program in the Arkoma Basin (the Texaco Program). Therefore, the principal issue is whether Sunbelt Oil is prohibited as a matter of law from recovering the fair and reasonable value of alleged services rendered by Sunbelt Oil to Peko Oil grounded upon a quantum meruit claim. That claim arises from an oil and gas transaction between Peko Oil and Texaco U.S.A. known here as the Texaco Program. Our disposition of this appeal centers on Peko Oil's fourth and fifth points of error. In its fourth and fifth points of error, Peko Oil contends that the trial court erred in overruling its motion for instructed verdict and motion for judgment notwithstanding the verdict (1) because there was no evidence that Sunbelt Oil notified Peko Oil that Sunbelt Oil expected to be compensated by Peko Oil, and (2) because it was conclusively established by the evidence that Sunbelt Oil rendered services in expectation of future advantage or business opportunity. We agree with Peko Oil's contentions. Accordingly, we reverse and render.

### Background Facts

The dispute between the parties arose as a result of Sunbelt Oil submitting a lease acquisition and drilling program to Peko Oil on May 6, 1987. This lease acquisition and drilling program (the "Sunbelt Program") had been prepared by Texaco at the request of Sunbelt Oil.[1] After reviewing the Sunbelt Program, Peko Oil elected not to participate in the Sunbelt Program because it was too large and too risky. Peko Oil, however, subsequently learned from another company, Energy Assets International Corporation, that Texaco had a different, much smaller and less risky program available (i.e., the Texaco Program). Although Sunbelt Oil was aware of the existence of the Texaco Program, at no time did Sunbelt Oil present the Texaco Program to Peko Oil or even disclose to Peko Oil that it existed. On June 16, 1987, Peko Oil representatives met with Texaco

to discuss the smaller Texaco Program. At the direction of Energy Assets, Sunbelt Oil set up the meeting and attended, but did not play an active role at the meeting. Peko Oil subsequently decided to enter into the Texaco Program and signed a letter of intent with Texaco on June 30, 1987. Sunbelt Oil made no attempts to communicate with Peko Oil between the June 16, 1987 meeting with Texaco and the date Peko Oil signed its letter of intent with Texaco. When Sunbelt Oil learned that Peko Oil had signed a letter of intent with Texaco, they met with Peko Oil and demanded, for the first time, the right to become Peko Oil's "exclusive gas marketing agent" for its share of gas discovered by the Texaco Program. However, as of that date, Sunbelt Oil, by its own admission, had no experience in marketing gas for a producer such as Peko Oil. Peko Oil refused Sunbelt Oil's demand but did offer Sunbelt Oil a preferential right to purchase Peko Oil's share of the gas discovered by the Texaco Program. Sunbelt Oil refused Peko Oil's offer, and Peko Oil then commenced this litigation seeking a declaratory judgment that it had no liability to Sunbelt Oil. Sunbelt Oil counterclaimed seeking the cash value of the services allegedly provided Peko Oil for allegedly introducing Peko Oil to the Texaco Program. The jury answered that $900,000.00 would fairly and reasonably compensate Sunbelt Oil for the valuable services which Sunbelt Oil rendered to Peko Oil with respect to the Texaco Program. In this connection, we note that the jury found in response to unchallenged question numbers 4 and 6 that there was no oral or written agreement between Peko Oil and Sunbelt Oil under which Peko Oil agreed to employ Sunbelt Oil as the exclusive marketing agent for Peko Oil's share of the natural gas discovered in the 67–well lease acquisition and drilling program in the Arkoma Basin (the Texaco Program). Hence, in the present case, Sunbelt Oil does not seek to recover damages arising out of Sunbelt Oil's not obtaining an exclusive gas marketing arrangement from Peko Oil. We keep in mind that Sunbelt Oil seeks recovery only upon a

---

**1.** The Sunbelt Program involved a greater number of wells than did the Texaco Program.

quantum meruit claim for the fair and reasonable value of alleged services rendered by Sunbelt Oil to Peko Oil. The gravamen of this quantum meruit claim is that Sunbelt Oil introduced Peko Oil to a business venture with Texaco U.S.A. known as the Texaco Program.

### The Dispositive Questions

Peko Oil's fourth and fifth points of error raise two interrelated issues. The first issue is whether a broker will be permitted to recover a commission or a fee from a buyer when the broker has unequivocally represented that no commission or fee would be payable by the buyer. The second issue is whether a broker can maintain a quantum meruit claim where he has provided services with no expectation of compensation, but instead has provided such services with an expectation of a future advantage or business opportunity. This second issue is one of first impression in Texas.

### The Representation that No Commission or Fee Would Be Payable

The facts as to this issue are clear and undisputed. At its first meeting with Sunbelt Oil, Peko Oil representatives asked Sunbelt Oil representatives whether Sunbelt Oil expected any compensation from Peko Oil if Peko Oil entered into a lease acquisition and drilling program with Texaco U.S.A. Sunbelt Oil's response was *no*. Indeed, during trial, one of Sunbelt Oil's representatives testified:

> If I wanted a *fee* from you [Peko Oil], from day one, I would have said what I wanted. I had no desire to have a *commission or fee* in the program. I would have told you. It would have been in my original letter. It's not what I want. *I want the exclusive right to market the gas,* like I told you from day one.

(emphasis added).

■ Quantum meruit is an equitable remedy which does not arise out of a contract, but is independent of it. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990). Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Vortt Exploration*, 787 S.W.2d at 944. This remedy is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration*, 787 S.W.2d at 944. Recovery in quantum meruit will be had when nonpayment for the services rendered would result in an unjust enrichment to the party benefited by the work. *Vortt Exploration*, 787 S.W.2d at 944. The Supreme Court set out the elements of a quantum meruit claim in *Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex.1985). To recover under quantum meruit a claimant must prove that:

1) valuable services rendered or materials furnished;

2) for the person sought to be charged;

3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him;

4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Vortt Exploration*, 787 S.W.2d at 944. The present case focuses upon the fourth element. Hence, we conclude that to establish a quantum meruit claim, Sunbelt Oil was required to prove that Peko Oil was placed on notice that Sunbelt Oil was expecting compensation from Peko Oil in return for presenting the Texaco Program to Peko Oil.

■ Sunbelt Oil concedes that it did not want a fee or commission. In its brief, Sunbelt Oil tells us that "Peko is correct in saying that Sunbelt did not want a commission or fee in connection with their participation." Sunbelt Oil, however, maintains that it told Peko Oil that it wanted to be the exclusive marketing agent for the gas produced. Thus, Sunbelt Oil insists that its desire to be the exclusive marketing agent expressed to Peko Oil constitutes sufficient record evidence to prove that Sunbelt Oil notified Peko Oil that Sunbelt Oil expected

to be paid compensation. We disagree. We conclude that the evidence relied upon by Sunbelt Oil proves only that Sunbelt Oil was seeking a future business opportunity, not compensation. We recognize that the expected payment does not have to be monetary. *See Vortt Exploration*, 787 S.W.2d at 945. Nevertheless, we conclude that the present case is distinguishable from *Vortt Exploration*. We reach this conclusion because in the present case Sunbelt Oil expressed its position in terms of "I want the exclusive right to market the gas, like I told you from day one." Hence, Sunbelt Oil stated its expectation in terms of what it *hoped* to obtain in the future. In short, Sunbelt Oil was performing services seeking to incur Peko Oil's favor, not to create an implied obligation on Peko Oil's part to pay Sunbelt Oil in the form of an exclusive right to market gas. Thus, we reason that if Sunbelt Oil introduced Peko Oil to the transaction with the hope of receiving in the future an exclusive right to market gas, but with no expectation of payment upon consummation of the transaction, then it defies logic and common sense to impose an obligation upon Peko Oil to compensate Sunbelt Oil for $900,000 upon the consummation of the transaction contemplated by the Texaco Program. By so doing, this court would be fabricating a promise implied by law, *i.e.*, a cash payment upon consummation of the transaction, which neither of the parties expected or agreed upon. We decline to allow Sunbelt Oil to bootstrap its way into a quantum meruit claim by asserting on the one hand that it was seeking a future advantage or business opportunity (while at the same time admitting it was not seeking cash compensation), and then on the other hand later suing for cash compensation, and not for loss by reason of the future advantage or business opportunity. We conclude further, therefore, that Sunbelt Oil failed to offer any evidence to prove the fourth element for recovery under quantum meruit. It follows, therefore, that there is no evidence to support the jury's finding in answer to question number nine that services were furnished by Sunbelt Oil to Peko Oil under such circumstances as reasonably notified Peko Oil that Sunbelt Oil expected to be compensated by Peko Oil. There being no evidence to support the jury's quantum meruit finding in this regard, we conclude that the trial court erred in overruling Peko Oil's motion for instructed verdict and motion for judgment notwithstanding the verdict. We reach this conclusion because there was no evidence that Sunbelt Oil notified Peko Oil that Sunbelt Oil expected to be compensated by Peko Oil. We sustain Peko Oil's fourth point of error.

## The Expectation of Future Advantage or Business Opportunity

■ In any event, whether we are right or wrong in our disposition of the "reasonably notified" element of a quantum meruit claim, we conclude that Sunbelt Oil cannot recover against Peko Oil. We reach this conclusion because the expectation of a future business advantage or opportunity cannot form the basis of a cause of action in quantum meruit.

As noted above, Sunbelt Oil admitted that it was not seeking a commission or a fee from Peko Oil in connection with Peko Oil's entry into the Texaco Program. Instead, Sunbelt Oil was seeking the future advantage or business opportunity of becoming an exclusive gas marketing agent for Peko Oil's share of gas, if Peko Oil entered into the Texaco Program. Again we note that in response to unchallenged question numbers 4 and 6, the jury found that there was no oral or written agreement between Peko Oil and Sunbelt Oil with respect to marketing gas from the Texaco Program. Therefore, Sunbelt Oil had, at best, an expectation of a future advantage or business opportunity to market gas that might be discovered as a result of the Texaco Program. Nevertheless, Sunbelt Oil elected to pursue litigation to recover something which it represented it was never seeking—a commission or a fee.

■ Hence, we must determine whether an expectation of a future business advantage or opportunity forms a basis for a quantum meruit claim. We conclude that an expectation of a future busi-

ness advantage or opportunity cannot form the basis of a quantum meruit claim. As is set out in RESTATEMENT OF RESTITUTION § 57 (1937):

§ 57. GIFTS MADE IN ANTICIPATION OF GRATUITY OR CONTRACT.

A person who has conferred a benefit upon another, manifesting that he does not expect compensation therefor, is not entitled to restitution merely because his expectation that the other will make a gift to him or enter into a contract with him is not realized.

Comment:

\* \* \* \* \* \*

(b) *Subject matter.* The rule stated in this Section is applicable irrespective of the nature of the benefit conferred. The benefit may consist of money or other things, or of services.

\* \* \* \* \* \*

So, too, in the business world, services are frequently given in anticipation of future employment. In neither type of case, where the inference of a promise to pay has been rebutted, does legal liability result, even though the benefit was conferred because of the reasonable belief that a gift would be made or employment given and although the beneficiary was under a moral duty so to do.

Courts considering the question have held that the expectation of a future business advantage or opportunity cannot form the basis of a cause of action in quantum meruit. It is elementary in the law governing quantum meruit recovery for work and labor that no recovery may be had for services performed, without thought of direct cash compensation, for business reasons, and no recovery can be had for preliminary services that are performed with a view to obtaining business through a hoped for contract. *Maple Island Farm v. Bitterling,* 209 F.2d 867, 871–72 (8th Cir.1954). (Services performed by plaintiff, including counsel and advice, in connection with the Mexican sales were rendered in the hope and expectation of obtaining a gainful connection in defendant's contemplated export of powdered milk to Venezuela. *Maple*

*Island Farm,* 209 F.2d at 872. In *Maple Island* the plaintiff assisted the defendant in the sale of powdered milk to customers in Mexico.) Nor is compensation mandated on a quasi-contractual claim where the services were rendered simply in order to gain a business advantage. *See Bloomgarden v. Coyer,* 479 F.2d 201, 211 (D.C.Cir.1973). In situations involving personal services, compensation is not mandated where the services were rendered simply in order to gain a business advantage. *See Lirtzman v. Fuqua Industries, Inc.,* 677 F.2d 548, 553 (7th Cir.1982). The Courts have reached the same conclusion where the plaintiff did not contemplate a personal fee, or the defendant could not reasonably have supposed that he did. *Lirtzman,* 677 F.2d at 553. Quantum meruit is available where the parties understand and intend that compensation is to be paid, but not in the case where plaintiff has testified at the outset he did not intend to seek compensation for his services, instead choosing to pursue the expectation of a future profit. *See Cherokee Oil Co. v. Union Oil Co. of California,* 706 F.Supp. 826, 830 (M.D.Fla.1989). Quantum meruit relief cannot be obtained where the benefit is conferred officiously or gratuitously or where the services were rendered to gain a business advantage or where the defendant could not have reasonably believed that the plaintiff expected a fee. *P–K Tool & Mfg. Co. v. General Electric Co.,* 612 F.Supp. 276, 278 (N.D.Ill. 1985). Courts generally have refused to find unjust enrichment from services rendered without pay where the services were given during the negotiation phase of a commercial undertaking. *North American Financial Group, Ltd. v. S.M.R. Enterprises, Inc.,* 583 F.Supp. 691, 700 (N.D. Ill.1984). Where preliminary services are conferred for business reasons, without the anticipation that reimbursement will *directly* result, but rather, with the expectation of obtaining a hoped-for contract and incidental to continuing negotiations relating thereto, quasi-contractual relief is unwarranted. *North American,* 583 F.Supp. at 700 (emphasis in original). Quantum meruit relief may not be obtained where the

benefit is conferred officiously or gratuitously, the services were rendered in order to gain a business advantage, the plaintiff did not contemplate a fee at the time the services were rendered, or the defendant could not have reasonably believed that the plaintiff expected a fee. *Euramca Ecosystems, Inc. v. Roediger Pittsburgh, Inc.*, 581 F.Supp. 415, 422 (N.D.Ill.1984). Where preliminary services are rendered to gain a business advantage with the expectation of gaining a hoped for contract, without any reasonable anticipation on the part of either the plaintiff or the defendant that reimbursement will directly result, quasi-contractual relief is unwarranted. *Van C. Argiris & Co. v. FMC Corp.*, 144 Ill.App.3d 750, 98 Ill.Dec. 601, 605, 494 N.E.2d 723, 727 (1986). Quantum meruit relief is not available where the benefit is conferred officiously or gratuitously, the services were rendered in order to gain a business advantage, the plaintiff did not contemplate a fee at the time the services were rendered, or the defendant could not have reasonably believed that the plaintiff expected a fee. *See Plastics & Equipment Sales Co., Inc. v. DeSoto, Inc.*, 91 Ill. App.3d 1011, 47 Ill.Dec. 487, 493, 415 N.E.2d 492, 498 (1980). It follows from a requirement of an inequity that there is no general responsibility to compensate one for work and labor done irrespective of the circumstances in which it is carried out. *Rutledge v. Housing Authority of East St. Louis*, 88 Ill.App.3d 1064, 44 Ill.Dec. 176, 180, 411 N.E.2d 82, 86 (1980). Where preliminary services are conferred for business reasons without the anticipation that reimbursement will directly result, but rather with the expectation of obtaining a hoped-for contract and incidental to continuing negotiations related thereto, quasi-contractual relief is unwarranted. *Rutledge*, 44 Ill.Dec. at 180, 411 N.E.2d at 86. Where services are rendered by one party and voluntarily accepted by another, the presumption that there is an expectation of payment therefor, as well as an implied promise of payment for the reasonable worth of those services, may be rebutted by a showing of strong self-interest in the outcome of the transaction by the party furnishing those services. Compensation on a quasi contract theory is not mandated where the services were rendered simply to gain a business advantage or where the plaintiff did not contemplate a personal fee. *Salamon v. Terra*, 394 Mass. 857, 477 N.E.2d 1029, 1032–33 (1985).

█ We conclude that in the present case it has been conclusively established as a matter of law that any alleged services alleged to have been performed for Peko Oil by Sunbelt Oil were performed, without thought of direct cash compensation, for business reasons. Indeed, we conclude further that in the present case it has been conclusively established as a matter of law that any alleged services alleged to have been performed for Peko Oil by Sunbelt Oil were preliminary services that were performed with a view to obtaining business through a hoped-for contract. Therefore, we conclude further that in the present case, no recovery can be had for the alleged services as a matter of law. We reach these conclusions because it is elementary in the law governing quantum meruit recovery for work and labor that no recovery may be had for services performed, without thought of direct cash compensation, for business reasons. *Maple Island Farm*, 209 F.2d at 871–72. Moreover, no recovery can be had for preliminary services that are performed with a view to obtaining business through a hoped for contract. *Maple Island Farm*, 209 F.2d at 871–72. *See also Dunn v. Phoenix Village, Inc.*, 213 F.Supp. 936, 952–54 (W.D.Ark.1963) (where plaintiff's chief purpose in obtaining loan commitments was to place himself in a favorable position to write insurance that might be required by the lenders); *Gould v. American Water Works Serv. Co.*, 52 N.J. 226, 245 A.2d 14, 16–27 (1968) (where plaintiff dug water wells in the hope that he could negotiate a favorable rate of the well or property to defendants who owned adjacent lands); *Anderson v. Distler*, 173 Misc. 261, 17 N.Y. S.2d 674, 678 (1940) (where plaintiff furnished information to defendant with intent of receiving other business).

Because *Vortt Exploration* was decided on the narrow issue of whether the notification in that case rose to the level of notification required by the fourth element of a quantum meruit claim under *Bashara*, 685 S.W.2d at 310, we conclude that our Supreme Court has not addressed the question presented by Peko Oil's fifth point of error and now considered by this court. Therefore, we follow the holdings in those jurisdictions which have addressed the question. Because the evidence conclusively establishes that Sunbelt Oil seeks recovery for preliminary services that were performed with a view to obtain business through a hoped-for contract, we conclude that the evidence conclusively establishes that Sunbelt Oil rendered services in expectation of future advantage or business opportunity. Consequently, the trial court erred in overruling Peko Oil's motion for instructed verdict and motion notwithstanding the verdict. We sustain Peko Oil's fifth point of error.

In light of our disposition of Peko Oil's "legally insufficient" fourth point of error, it follows, and we so hold, that Sunbelt Oil cannot recover on its quantum meruit claim against Peko Oil as a matter of law. Likewise, in light of our disposition of Peko Oil's fifth point of error, it follows, and we so hold, that Sunbelt Oil cannot recover on its quantum meruit claim against Peko Oil as a matter of law. A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, the appellate court must consider only the evidence and the inferences tending to support findings and disregard all evidence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, findings may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Applying these principles to the present case, we conclude that we must reverse and render a take-nothing judgment in favor of Peko Oil.

In its fourteenth point of error, Peko Oil contends that the trial court erred in failing and refusing to render judgment for Peko Oil for recovery of its attorney's fees. This action was commenced by Peko Oil as a declaratory judgment action pursuant to the provisions of section 37.001 *et seq.* of the Texas Civil Practices and Remedies Code. The Texas Civil Practices and Remedies Code, section 37.009 (formerly the Texas Uniform Declaratory Judgments Act, TEX.REV.CIV.STAT.ANN. art. 2524–1, § 10 (Vernon Supp.1985)) provides that the court may award reasonable and necessary attorney's fees as are equitable and just. Therefore, the grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). Peko Oil fails to tell us how the trial court abused its discretion. Instead, Peko Oil appears to argue that it can be treated as the prevailing party and must be awarded attorney's fees as such. "Prevailing party" is not the test. *See District Judges of Collin County v. Commissioners Court of Collin County*, 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Peko Oil does not argue that denial of attorney's fees was not equitable and just. We overrule Peko Oil's fourteenth point of error.

In view of our disposition of Peko Oil's fourth point of error, we need not address Peko Oil's remaining points of error or Sunbelt Oil's three cross-points of error. Likewise, in view of our disposition of Peko Oil's fifth point of error, we need not address Peko Oil's remaining points of error or Sunbelt Oil's three cross-points of error.

Reversed and rendered.