NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-771                                        Appeals Court

STEPHEN BONINA  vs.  JANE A. SHEPPARD.


No. 16-P-771.

Worcester.     March 2, 2017. - June 1, 2017.

Present:  Kafker, C.J., Massing, & Desmond, JJ.


Cohabitation, Nonmarital.  Restitution.  Damages,
     Restitution.  Unjust Enrichment.


Civil action commenced in the Superior Court Department on
July 22, 2011.

The case was heard by Gregg J. Pasquale, J.


Barry A. Bachrach for the defendant.
Scott G. Gowen for the plaintiff.


KAFKER, C.J.  The issue presented in this case is whether a

substantial, uncompensated contribution by one unmarried

cohabitant to improve the home owned by the other is recoverable

in restitution.  The plaintiff, Stephen Bonina, and the

defendant, Jane A. Sheppard, were involved in a long-term

nonmarital relationship.  The plaintiff, a contractor, expended

significant funds and labor to improve the home in which the

couple lived for sixteen years, which was owned by the defendant. When the relationship ended, the plaintiff brought this action against the defendant claiming, inter alia, that she had been unjustly enriched by his contributions to the home. After a bench trial, a Superior Court judge awarded the plaintiff $156,913.07 in restitution, which represented the funds he expended to improve the home over sixteen years. The defendant appeals, claiming that the trial judge erred by (1) finding that she was unjustly enriched; and (2) calculating the plaintiff's restitution based on his costs to improve the home, rather than the increased value of the home with the improvements. We affirm.

Background. We summarize the facts found by the trial judge, supplemented by uncontroverted facts in the record. Weber v. Community Teamwork, Inc., 434 Mass. 761, 769 (2001). The plaintiff and the defendant met on New Year's Eve, 1989, and began dating shortly thereafter. Three years later, the parties became interested in purchasing a home in Bolton that had been vacant for two years. The home was owned by Concord Co-Operative Bank (bank). During negotiations with the bank, the parties coauthored a letter declaring their serious interest in the home, and explaining that the cost to bring the home to livable condition was $43,500, based on estimations by the plaintiff and another contractor. In May, 1993, the

defendant purchased the home for $131,500 in her name only, becoming the sole obligor on the mortgage.

As it turned out, the entire home had to be gutted, and the necessary repairs cost much more than anticipated. The parties moved into the home in September, 1993. The plaintiff thereafter paid half of the mortgage payments, taxes, and living expenses during the cohabitation. He used various places in the home as his office for his contracting business.

In 1994, the parties constructed an addition to the living room. Between 1993 and 1998, the plaintiff spent $74,068.94 on improvements and maintenance of the home, which included the addition, as well as a new furnace, windows, a gas stove, and a new basement floor. The plaintiff spent "countless hours" performing the "overwhelming majority" of the work. The defendant spent $35,544.17 on improvements and maintenance during this period.

The parties were engaged on Christmas Eve, 1999. Around this time, the parties extended the kitchen to make a better passageway to a room that the plaintiff planned to use as his office. While this work was being performed, the parties decided to build a second floor above the office. From 1999 to 2004, the plaintiff spent approximately $98,352.02 on improvements to the home, most of which went toward materials to construct the addition and the second floor, such as roofing,

siding, flooring, and electrical and plumbing work.  The defendant spent $46,532.99.

In 2005, the plaintiff contributed approximately $17,967.32 for a new septic system.  From 2006 to 2008, the plaintiff contributed an additional $3,572.24 for repairs and maintenance. The defendant's contributions during this time were minimal.

Shortly thereafter, the relationship deteriorated, and the plaintiff moved out in February, 2009.  By this time, the plaintiff had contributed $93,744.94 towards the monthly mortgage payments, which represented approximately one-half of the payments due during the sixteen years that he lived in the home.  The plaintiff then brought this action seeking restitution for his contributions to the home under an unjust enrichment theory.[1]  The trial judge found that the "majority" of the plaintiff's costs reflected materials to construct the three additions, including lumber, cement, insulation, piping, and flooring, as well as other items that became permanent fixtures of the home, including windows, doors, appliances, the septic system, and the furnace.  The judge deducted the plaintiff's

_____

[1] The plaintiff also brought claims for breach of fiduciary duty under a partnership, conversion, fraud, breach of the covenant of good faith and fair dealing, misrepresentation, constructive trust, and other equitable relief.  Specifically, the plaintiff alleged that he and the defendant entered into a partnership agreement to renovate and to resell the home.  The trial judge found against the plaintiff on each of these claims, and he has not appealed those rulings.

costs for maintenance of the home, such as fence painting and lawn mowing, as well as those related to "short-term benefits," such as extension cords, light bulbs, and log splitting; the judge found that the plaintiff had received the benefit of those items.  After deducting those latter amounts, the judge awarded the plaintiff $156,913.07 in restitution, which represented his costs to purchase the materials and the fixtures to improve the home.

Discussion.  1.  Unmarried cohabitants and unjust enrichment.  "Cohabitation in Massachusetts does not create the relationship of husband and wife in the absence of a formal solemnization of marriage, . . . [and] the incidents of the marital relationship [do not] attach to an arrangement of cohabitation."  Sutton v. Valois, 66 Mass. App. Ct. 258, 262 (2006), quoting from Collins v. Guggenheim, 417 Mass. 615, 617 (1994).  See Wilcox v. Trautz, 427 Mass. 326, 332 (1998) (noting "clear distinction . . . between the legal rights of married and unmarried cohabitants").  Unmarried cohabitants, however, "may lawfully contract concerning property, financial, and other matters relevant to their relationship."  Ibid.  See Northrup v. Brigham, 63 Mass. App. Ct. 362, 368 (2005); Sutton, supra.  Equitable relief is also available, including restitution for unjust enrichment.  See Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005); Sutton, supra at 262-263.  "We examine the

judge's imposition of equitable remedies under an abuse of discretion standard."  Cavadi v. DeYeso, 458 Mass. 615, 624 (2011) (citation omitted).

Unjust enrichment occurs when a party retains the property of another "against the fundamental principles of justice or equity and good conscience."  Santagate, supra (citation omitted).  The plaintiff must establish "not only that the defendant received a benefit, but also that such a benefit was unjust."  Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013).  Whether the benefit was unjust "turns on the reasonable expectations of the parties."  Ibid. (citation omitted).

The defendant claims that the trial judge erred in determining that she was unjustly enriched because the parties were in a romantic relationship when the plaintiff made his contributions to the home.  We disagree.  The parties' romantic relationship does not prevent the plaintiff from recovering from the defendant under an unjust enrichment theory.  See Sutton, 66 Mass. App. Ct. at 263.  In Massachusetts, there is no presumption that a claimant's contributions during a romantic relationship are gratuitous.  See Northrup, 63 Mass. App. Ct. at 368 (declining to apply "gratuitous services presumption" to services provided to former boy friend).  The judge's factual findings demonstrate that the substantial contributions made by

the plaintiff to improve the home were not meant to be gifts to the defendant.  The trial judge found, for example, that the plaintiff "believed that [the parties] were to jointly purchase the home, make improvements, increase its value, and eventually buy a bigger home."

The Restatement (Third) of Restitution and Unjust Enrichment § 28(1) (2011) specifically provides for a remedy in these circumstances, stating, "If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship."  Unjust enrichment in this context is based on the "claimant's frustrated expectations."  Id. at comment c.  Recovery is allowed because the claimant would not have conferred the benefit, "except in the expectation that the parties' subsequent relationship would be something other than it proved to be."  Ibid.

In the present case, in accordance with § 28(1), the plaintiff's contributions to improve the defendant's home were substantial.  The trial judge found that his compensable contributions totaled $156,913.07, which allowed three additions

to be built and to remain permanent fixtures of the home.  These contributions were also uncompensated because the defendant did not reimburse him and, although the plaintiff lived in the home for sixteen years, he paid $93,744.94 toward the mortgage.  The judge found that the mortgage payments were "more than adequate for [the plaintiff's] use and occupancy [of] the residence."  As such, the plaintiff could seek restitution for his contributions to the defendant's home under an unjust enrichment theory.

2.  Proper measure of restitution.  The defendant next claims that the trial judge erred by measuring the plaintiff's restitution as the costs he incurred in improving the home, rather than the increased value of the home with the improvements.  We disagree, and conclude that, in the particular circumstances of this case, the judge did not abuse his discretion in determining that the plaintiff's costs in improving the home constituted a proper measure of unjust enrichment and restitution.

We begin by recognizing that measuring restitution for unjust enrichment poses special difficulties and, as such, trial judges need "considerable discretion" to fashion appropriate remedies.[2]  Restatement (Second) of Contracts § 371 comment a

---

[2] "It is a well settled principle that, in fashioning appropriate relief, the issuance and scope of equitable relief rests within the sound discretion of the judge . . . who may

(1981).  See Dobbs, Law of Remedies § 4.1(4), at 566 (2d ed. 1993) ("The chief remedial problem of restitution is perhaps its measurement").  "[R]esolution of these problems varies greatly depending on the circumstances."  Restatement (Second) of Contracts § 371 comment a (1981).  Thus, "[t]o the extent that the benefit may reasonably be measured in different ways, the choice is within the discretion of the court."  Ibid.  These problems are particularly pronounced in the context of unmarried cohabitants.  The parties often have built a life together over many years, and the trial judge must "untangl[e]" complicated property interests that arose during the relationship. Restatement (Third) of Restitution and Unjust Enrichment § 28 reporter's note a (2011).

    That being said, we recognize that "[r]estitution cannot be measured by the plaintiff's losses, only by the defendant's gains."  Dobbs, supra at § 4.5(4), at 651.  Restitution is distinct from damages, "which measures compensation for loss rather than disgorgement of the defendant's gain."  Id. at § 12.1(1), at 9.  See Santagate, 64 Mass. App. Ct. at 336.  The plaintiff's costs to confer the benefit, however, may be evidence of, and relevant to, determining the value of the benefit received by the defendant.  Restatement (Third) of

_____

phrase the court's order so as to afford a full, complete remedy."  Johnson v. Martignetti, 374 Mass. 784, 794 (1978).

Restitution and Unjust Enrichment § 49 comment d (2011).

Indeed, § 49(3)(b) of the Restatement (Third) of Restitution and

Unjust Enrichment (2011) specifically lists "cost to the

claimant of conferring the benefit" as a possible measure of

restitution for unjust enrichment claims for nonreturnable

benefits.[3]  The Restatement further provides, "Cases in which the

cost to the claimant is the only plausible measure of benefit

conferred are in fact very numerous.  Obvious illustrations

include cases in which the claimant recovers out-of-pocket costs

in maintaining or repairing property for which the defendant is

solely or jointly responsible."  Id. at reporter's note e.[4]  The

Restatement explains, "[I]n many cases a reasonable way to value

the benefit conferred on the defendant is to value the services

and materials provided by the plaintiff.  This is because the

cost of the services and materials provided is roughly

equivalent to the value of the benefit conferred, and the cost

. . . is susceptible to proof at trial, whereas the value

conferred is not."  Ibid.  See Dobbs, supra at § 13.2(2), at 520

---

[3] The other possible measures of enrichment are "the value
of the benefit in advancing the purposes of the defendant," "the
market value of the benefit," and "a price the defendant has
expressed a willingness to pay."  Restatement (Third) of
Restitution and Unjust Enrichment § 49(3) (2011).

[4] See Restatement (Third) of Restitution and Unjust
Enrichment § 49 comment e (2011) ("When restitution is available
for goods or services having no established market price, the
cost of providing the benefit may furnish the best -- or the
only -- means of measuring the recipient's enrichment").

(benefits may be measured by "money paid by or on behalf of the plaintiff").[5]

In the context of unmarried cohabitants, there are numerous reasons why a plaintiff's actual costs may be a prudent and reliable measure of the benefit conferred on a defendant. In these relationships, the parties often have made substantial, uncompensated contributions to property over many years without a business-like or market-based approach to their financial arrangements. Instead, the contributions reflect their romantic relationship, shared expenses, and expectation of continuing to live together as a couple. See Restatement (Third) of Restitution and Unjust Enrichment § 28 comment c (2011). The correlation of costs with benefits is especially valid where, as here, the costs that the plaintiff incurred were for

---

[5] See Peart v. District of Columbia Hous. Authy., 972 A.2d 810, 820 (D.C. 2009) ("[O]rdinarily measuring th[e] benefit by the actual cost to the claimant will provide a reasonable approximation of an appropriate award"); Bowden v. Grindle, 675 A.2d 968, 973 (Me. 1996) ("The cost of improvements, such as the value of the work, labor, services, and materials furnished, is evidence that may be considered in determining the value of the benefit conferred"); Patrick V. Koepke Constr., Inc. v. Woodsage Constr. Co., 844 S.W.2d 508, 516 (Mo. App. 1992) (labor and materials used to improve property "not irrelevant" to determining benefit received by defendant); Noel v. Cole, 98 Wash. 2d 375, 383 (1982) ("cost is some evidence of value"). Compare Nassr v. Commonwealth, 394 Mass. 767, 772 n.4 (1985) (noting in hazardous waste cleanup case that "costs" are "not the proper measure of damages under an unjust enrichment theory of recovery" but, rather, that "the proper measure of recovery for [unjust enrichment] is the reasonable value of the benefit conferred").

construction materials and fixtures for the defendant's home. In these circumstances, there is a direct dollar-for-dollar correlation between the costs incurred by the plaintiff and the benefit conferred on the defendant. Moreover, in the present case, neither the plaintiff nor the defendant presented evidence regarding other possible measures of unjust enrichment, such as the increased value of the home resulting from the materials and the services. As such, the trial judge had no other reliable, measurable basis on which to calculate the award.[6]

We further note that the benefit conferred on the defendant might actually have been greater than the recovery that the plaintiff sought based on his costs. As a contractor, the plaintiff contributed significant skills, labor, and expertise to the renovations, for which he did not charge the defendant. The trial judge found that the plaintiff performed the "lion's share" of the labor needed to improve the property, and spent

---

[6] The defendant also claims that the judge undervalued her own contributions to the home and the various benefits that the plaintiff himself enjoyed from the home in crafting the award. We disagree. The judge recognized that the defendant contributed more financially to the initial renovation than the plaintiff, credited her for other funds she expended, and noted that she "offered minimal assistance" in terms of "physical labor." Regardless, the defendant retained the home. The trial judge also acknowledged that the plaintiff enjoyed various benefits of his contributions while he lived in the home, including having an office there. The judge noted that the plaintiff's mortgage and tax payments were "more than adequate for [his] use and occupancy [of] the residence" and, thus, did not reduce the plaintiff's recovery on this basis.

"countless hours" doing the "overwhelming majority" of the work. There was obvious value to these services, but the plaintiff did not seek at trial to recover or to present evidence of the fair market value of his services. See Dobbs, Law of Remedies § 12.20(2), at 461 (2d ed. 1993) (benefit can be measured by "the market value of the labor and materials package -- what it would cost the owner to purchase such services and materials in the market").[7] Rather, he only sought reimbursement for his costs in purchasing the materials and the fixtures. The defendant therefore undoubtedly received a substantial discount in improving her home, which the trial judge aptly noted and took into consideration in measuring her unjust enrichment.[8]

We therefore hold that in this case, where the costs incurred by the plaintiff directly relate to the benefit

---

[7] See also Neibert v. Perdomo, 54 N.E.3d 1046, 1049 (Ind. App. 2016) (boy friend who worked in construction presented evidence of his "customary rates" and number of "work hours" spent renovating girl friend's father's home and new home couple planned to share, to support his unjust enrichment claim).

[8] As such, the trial judge properly exercised his discretion in the circumstances by not devaluing the plaintiff's contributions based on depreciation of the improvements. No such evidence was presented, and the judge's approach sensibly weighed the equities. The judge determined that the plaintiff should not "suffer a discount" of his contributions "given the nature and extent of his other intangible and meaningful contributions," including his labor, skills, and expertise as a contractor, for which he received no recovery. In the absence of reliable evidence of the amount of depreciation, it was well within the judge's discretion to not reduce the award on that basis.

conferred on the defendant, and neither party presented reliable evidence of other possible measures of unjust enrichment, the trial judge did not abuse his discretion in valuing the plaintiff's restitution as his costs in improving the home.[9] "This was a sound weighing of the equities based on the specific facts of this case."[10]  Bakwin v. Mardirosian, 467 Mass. 631, 639 n.9 (2014).

_____

[9] See, e.g., Dixon v. Smith, 695 N.E.2d 284, 287 (Ohio App. 3d 1997) (affirming restitution based on amount of money spent to improve boy friend's home during four-year cohabitation, despite evidence at trial through appraisals of "increase in value" of home due to improvements).  See also Salzman v. Bachrach, 996 P.2d 1263, 1269-1270 (Colo. 2000) (remanding for consideration of architect's exact contributions when he designed home to be shared with girl friend, spent almost $170,000 on construction, and conveyed his interest to her); Mason v. Rostad, 476 A.2d 662, 666 (D.C. 1984) (contractor that renovated girl friend's home during four-year cohabitation "entitled to recover the funds he expended, the reasonable value of the work he performed and the services he rendered in renovating and improving the . . . property"); Evans v. Wall, 542 So.2d 1055, 1056 (Fla. App. 1989) (girl friend properly reimbursed for "capital, materials, and labor" invested in boy friend's property during five-year cohabitation); Neibert v. Perdomo, 54 N.E.3d 1046, 1049 (Ind. App. 2016) (contractor entitled to bring unjust enrichment claim against former girl friend for "labor, equipment, and materials" he provided in renovating her father's home and new home couple planned to live in); Thibeault v. Brackett, 938 A.2d 27, 33 (Me. 2007) (although trial judge calculated expenditures incorrectly, judge properly based award on "total amount spent on improvements," when girl friend made substantial contributions to improvement of boy friend's home during six-year cohabitation).

[10] The defendant also claims that the trial judge erred by not barring or reducing the plaintiff's recovery based on his unclean hands.  The doctrine of unclean hands denies equitable relief "to one tainted with the inequitableness or bad faith relative to the matter in which [he] seeks relief."  Murphy v.

Judgment affirmed.

---

Wachovia Bank of Del., N.A., 88 Mass. App. Ct. 9, 15 (2015) (citation omitted).  The judge's over-all factual findings regarding the relationship, however, provide no support for such a finding.  Neither party behaved dishonorably.  Rather, the relationship did not work out as the parties expected.  "We are in no position to substitute our judgment for that of the judge on credibility questions."  Commonwealth v. Werner, 81 Mass. App. Ct. 689, 698 (2012).  In these circumstances, the trial judge did not err by not barring or reducing the plaintiff's recovery.